## Sternbergh v. Fehling

*William R. Lessig, Jr., Charles H. Weidner* and *Stevens & Lee,* for plaintiff.

*Ellis Brodstein* and *Frederick Edenharter,* for defendants.

HESS, J., October 1, 1958.—Quentin C. Sternbergh, plaintiff, instituted an action in assumpsit against Henry W. Fehling and Solon A. Sternbergh, defendants, seeking to recover damages for breach of a contract to buy stock of plaintiff in West Shore Manufacturing Company, a corporation. After the pleadings were closed, the parties agreed upon a case stated, which has been filed, argued before the court en banc and is now before us for decision.

On and prior to July 9, 1954, plaintiff was the owner of 666 shares of common stock of West Shore Manufacturing Company. On said date, plaintiff and defendants entered into a written agreement by the terms of which plaintiff sold to each of the defendants 333 shares of his stock, and each defendant agreed to pay him the sum of $9,500 in installments in the manner set forth in the agreement. Plaintiff fully complied with the terms of the agreement, but Henry W. Fehling defaulted after having paid $1,100 on account of the purchase price. Solon A. Sternbergh, likewise, defaulted after having paid $1,583.33 on account of the purchase price.

On July 21, 1955, Ellis Brodstein, attorney, addressed a letter to plaintiff advising him that defend-

ants were exercising their option under paragraphs 3 and 7 of the contract by each of them purchasing one of the shares of stock held by the other defendant for the purchase price of $28.56 per share, and enclosed with the letter two checks, each in the amount of $28.56. The checks bore on the back the notation "Accepted in full release and settlement of any and all claims against Henry W. Fehling" in the one instance, and similar language relative to Solon A. Sternbergh on the other check. Plaintiff endorsed and cashed both checks on July 26, 1955.

Plaintiff did not reply to the letter, and on August 18, 1955, Mr. Brodstein mailed to plaintiff two stock certificates, one certificate representing the unpaid shares of Henry W. Fehling after the exercise of the option referred to in the letter of July 21, 1955, and the other certificate representing the unpaid shares of Solon A. Sternbergh after the exercise of the option. Plaintiff returned the respective certificates to defendants and they have retained the certificates. Plaintiff at no time exercised an option to have any stock returned to him.

The controversy concerns the interpretation of paragraph 3 of the contract, referring to the option of Solon A. Sternbergh, and paragraph 7 of the contract, relating to the option of Henry W. Fehling. The phraseology of the paragraphs is identical with the exception that in each instance the names are changed to refer to the defaulting defendant and the particular party entitled to exercise the option in event of default. Paragraph 3, referring to the option of Solon A. Sternbergh, is as follows:

"(3) In the event the said H.W.F. shall fail to pay the amounts owing to Q.C.S. under the terms of this Agreement, by reason of insolvency, bankruptcy, or otherwise, the said S.A.S. shall have the option to

purchase from H.W.F. the number of shares of stock of WEST SHORE obtained by dividing the unpaid balance owing by H.W.F. to Q.C.S. by Twenty-Eight and 56-100 Dollars ($28.56) per share, or such part of such shares as S.A.S. may elect to purchase, upon the assumption of S.A.S. of the liability of the said H.W.F. to Q.C.S for the unpaid balance of the purchase price, or the portion thereof applicable to such shares, and in the event of the exercise of such option by S.A.S., the said H.W.F. shall transfer, assign and deliver unto the said S.A.S. said shares of stock. Said option may be exercised by S.A.S. for a period of thirty (30) days, and in the event of his failure to exercise the same, the said Q.C.S. shall have the option, during a further period of thirty (30) days to have said amount of shares, or the portion thereof not purchased by S.A.S., returned to him upon his cancelling and satisfying the remaining indebtedness of H.W.F. under this Agreement. In the event of the exercise of the said option by either S.A.S. or Q.C.S., the liability of H.W.F. under the terms of this Agreement shall cease."

Defendants contend that upon their being in default, each one had the right to exercise the option, and that when they so elected and carried out the terms of the option they were both released from further liability to plaintiff for the unpaid stock.' They also contend that when plaintiff accepted and cashed their separate checks with the notation previously referred to, plaintiff released them from further liability to him. Plaintiff contends that under the terms of the contract, defendants were not released from liability to him for the unpaid stock when they exercised or attempted to exercise the options. He also contends that his act of accepting the cashing the checks was not an accord and satisfaction in view of the fact that no new consideration passed to him.

It is admitted that plaintiff fully complied with the contract by transferring unto defendants the stock purchased from him and that defendants defaulted in payment. The contract (paragraphs 3 and 7) clearly provides that upon default in payment by one defendant, the other defendant shall have the option to purchase and take title from the defaulting defendant of any or all of the stock for which plaintiff has not been paid, but in that event the defendant so electing assumed ". . . the unpaid balance of the purchase price, or the portion thereof applicable to such shares . . .": Paragraphs 3 and 7.

Later language in the same paragraphs gives to plaintiff the option to repurchase or take back unpaid shares from a defaulting defendant if such shares are not purchased by the nondefaulting defendant upon plaintiff's ". . . satisfying the remaining indebtedness of (the defaulting defendant) under this Agreement." In view of the fact that plaintiff at no time exercised his option to take back or repurchase any stock, we are not concerned with the language of his option except insofar as it is material to a construction of the entire contract.

The final sentence of paragraphs 3 and 7 is the particular source of difficulty in the question before us: "In the event of the exercise of the said option by either (one of defendants) or (plaintiff) the liability of (defaulting defendant) under the terms of this Agreement shall cease."

"It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. An interpretation will not be given to one part of a contract that would annul another part of it": Neal D. Ivey Company v. Franklin Associates, Inc., 370 Pa. 225, 231-32. See

also Harrity v. Continental-Equitable Title & Trust Co., 280 Pa. 237.

If we followed the construction defendants urge upon us, we would, in effect, be annuling the portions of the contract providing for a final sale of the stock, and defendants by defaulting under the contract and exercising the option would be able to avoid liability as they are now seeking to do. Applying the principles set forth in the cases cited, we are satisfied that the only reasonable construction of the final sentence of paragraphs 3 and 7 which relates to release of liability is that upon default by one of the defendants and election of the other defendant to purchase from the defaulting defendant stock for which plaintiff has not been paid, the liability of the defaulting defendant for payment of stock so purchased by the other defendant shall cease and such liability shall be solely upon the defendant electing to purchase the stock. If the so-called option is not exercised, or for such shares of stock as to which the option is not exercised, the defaulting defendant, under the terms of the contract, remains liable for payment to plaintiff. Any other construction of the contract would to us appear unreasonable and would completely ignore the contract as a whole.

Defendants also contend that even though the court construe the contract to have the interpretation which we accord to it, they are not liable to plaintiff for the reason that plaintiff in accepting and cashing their respective checks gave them a full and complete release. With that contention, we cannot agree. Each defendant elected to purchase from the other defendant one share of stock, and for the share so purchased paid to plaintiff the sum of $28.56, the agreed consideration per share. The release notation on the back of each check can only, at best, operate as a release of liability

to the purchaser for the share thus purchased and paid for. The face of each check shows that payment is made "Re: Election of option under agreement, etc.," and the reasonable construction of the release provision on the back of the check is that in accepting payment plaintiff releases the maker from liability for stock purchased under the option.

Furthermore, to consider the payment as an accord and satisfiaction which would operate to discharge the entire indebtedness is untenable for the reason that plaintiff only received what he was already entitled to have under the contract.

"'The payment by a debtor, and acceptance by the creditor, of a sum which is conceded by the debtor to be due and payable, or as to which there is no dispute or controversy, furnishes no consideration for the discharge of a disputed claim for an additional and distinct amount or item of liability, for the payment, being of nothing more than the debtor admittedly owes, is neither a detriment to him nor a benefit to the creditor, and so does not constitute or effect an accord and satisfaction thereof, or of the entire account between the parties, in the absence of any new or additional consideration, even though such payment is tendered and accepted or receipted for as in full payment or settlement. The payment operates as a discharge of the items or amount paid only, and the creditor is entitled to maintain an action to recover the balance of his claim' ": National Container Corporation of Pennsylvania v. Regal Corrugated Box Co., 383 Pa. 499, 506-07, citing 1 C. J. S. 502, 503, §29a(2).

The parties in their case stated, paragraph 17, have agreed that ". . . but if the Court be of the opinion that the exercise of said option rights granted under Paragraphs 3 and 7 of said contract, in the manner

indicated in said letter, was not valid and binding upon the plaintiff, or if, being valid, such exercise of said option rights or the endorsing and cashing of said checks did not discharge the defendants from their liability to plaintiff for the balance due as set forth in Paragraphs 14 and 15 hereof, then judgment shall be entered in favor of the plaintiff, Quentin C. Sternbergh, and against the defendant, Henry W. Fehling, in the sum of $8,371.44 with interest at 5 per cent per annum from July 1, 1955, and in favor of the plaintiff, Quentin C. Sternbergh, and against the defendant, Solon A. Sternbergh, in the sum of $7,888.11 with interest at the rate of 5 per cent per annum from July 1, 1955."

In view of our conclusions and the agreement, which we have quoted from the case stated, judgment must be entered for the plaintiff.